# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-cv-986 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| UNION PACIFIC RAILROAD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Union Pacific Railroad's motion [112] to exclude the testimony of Plaintiff Stanley Smith's expert, Timothy Lalk. For the reasons set forth below, Defendant's motion [112] is granted. This case is set for status hearing on July 12, 2017 at 9:30 a.m.

## I. Background[1]

In September 2005, while Plaintiff was employed by Defendant as a locomotive engineer, Plaintiff's driver's license was revoked for driving under the influence. Plaintiff reported the incident to Defendant, and he thereafter received a leave of absence through Defendant's Employee Assistance Program ("EAP"). In October 2005, the EAP referred Plaintiff to a clinician at Rush University Medical Center ("Rush"), John Houlihan, who oversaw Plaintiff's voluntary participation in both offsite inpatient and onsite outpatient treatment for chemical dependency. The Rush outpatient program specifically treated alcohol and cocaine abuse, and it was facilitated by Edward Lynch, a behavioral health clinician. On May 26, 2006, Lynch discharged Plaintiff from Rush's outpatient program and recommended that he "return to full

---

[1] The facts set forth below are drawn primarily from Defendant's filing and exhibits. See [113], [113-1] through [113-9]. Plaintiff's response does not include a statement of facts or any objections to the facts as set forth in Defendant's filing.

work responsibilities, without restrictions, in conjunction with EAP, and employer." See [117-1] (Lalk Deposition) at 69; see generally [113-5] (Lynch Deposition Excerpts) at 7-10. Mr. Houlihan thereafter recommended that Defendant engage another doctor, psychiatrist Stafford Henry, to conduct a full fitness-for-duty evaluation of Plaintiff, which Dr. Henry performed in August 2006. Dr. Henry ultimately recommended that Plaintiff complete additional items before being permitted to return to work, including at least one year of documented abstinence from alcohol and other mood-altering substances and the use of a C-Pap machine for Plaintiff's sleep apnea. See [113-4] at 15-16 (9/3/2006 Report of Dr. Henry). Accordingly, Defendant did not clear Plaintiff to return to work at that time.

Plaintiff went on to participate in a one-year inpatient treatment program in Texas from January 2007 to January 2008. In June 2008, Dr. Henry conducted a re-evaluation of Plaintiff. Dr. Henry again recommended that Plaintiff complete additional items before returning to work, again including a four-to-six month period of documented abstinence and the use of a C-Pap machine. See [113-4] at 27-28 (7/5/2008 Report of Dr. Henry). Defendant began processing Plaintiff for return, but Plaintiff was not cleared for return by Defendant until July 2010, due to a delay in scheduling a required sleep study for Plaintiff and his difficulty in procuring a C-Pap machine.

In 2011, Plaintiff filed this action against Defendant, alleging that it discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, on account of his alcoholism because Defendant did not allow Plaintiff to return to work in 2006 after his completion of the Rush outpatient program. See [37] at ¶¶ 15-18, 21, 31-40.

In support of his claims, Plaintiff has retained Lalk, a vocational rehabilitation counselor, to render an opinion as to (1) when Plaintiff was fit to return to work, and (2) Plaintiff's

damages. Lalk is a certified rehabilitation counselor and a Missouri-licensed professional counselor. See [117-2] (Lalk Expert Report) at 7. Lalk received a Master's degree in counseling from the University of Missouri-Columbia in 1979. *Id*. While working towards this degree, Lalk received instruction on chemical dependency counseling and he completed an internship that involved training in the subject area. See [117-1] at 32-37. He has worked in both public and private settings as either a vocational rehabilitation counselor or a vocational services specialist since 1979. [117-2] at 6. In his current position, which he has held since 1995, Lalk primarily conducts vocational rehabilitation evaluations for use in litigation. Specifically, Lalk reviews medical documentation and information regarding an individual's skills, training, and experience to determine that individual's employability and any needed accommodations. See [117-1] at 29. Lalk mainly testifies or otherwise offers opinions in Missouri workers' compensation lawsuits, civil cases in which an individual has sustained an injury that reduces his or her earning capacity, and marriage dissolution matters (where he evaluates the earning capacity of a spouse). See *id*. at 28-29. Lalk also has experience opining on disability-related matters before the Social Security Administration. *Id*. at 18-19. Since 2012, Lalk has offered testimony in more than 140 matters. See [117-2] at 8-19.

Here, Lalk reviewed selected case documents in rendering his opinions, which are laid out in a four-page report. In particular, Lalk's report notes that he relied on: (1) Plaintiff's deposition and the exhibits thereto, (2) the deposition of EAP Director Dr. Mark Jones and the exhibits thereto, (3) "Rush Behavioral Records," (4) the September 3, 2006 Report of Dr. Henry, (5) the July 9, 2008 Report of Dr. Henry,[2] (6) "Union Pacific Progress Notes[]," and (7) "Union

---

[2] For clarity, Dr. Henry's report is dated July 5, 2008. He sent the report to Defendant on July 9, 2008. See [113-4] at 17-28.

3

Pacific Manual."[3] See [117-2] at 5. Lalk's deposition testimony confirms that he did not independently interview or evaluate the Plaintiff in forming his opinions, and neither his report nor his deposition indicate that he consulted or relied on any specific industry or other materials in generating his opinions.[4] See [117-1] at 7; see generally [117-2]. His overall opinions are as follows:

> Based on the materials reviewed referenced in the attachment and my education and experience[,] I have formed the following opinions. First, [Plaintiff] successfully completed the intensive inpatient [sic] program at Rush Behavioral in May of 2006. At that time, he was fit to return to work and the Defendant should have undertook [sic] measures to return [Plaintiff] to work in May of 2006. Second, that even after [Plaintiff's] continued treatment[,] the Defendant failed to allow [Plaintiff] to return to work. In late 2008, [Plaintiff] completed further treatment including that which Dr. Henry recommended. [Plaintiff] was fit to return to work at that time and was still not allowed to return. Finally, it is my opinion that the Defendant's failure to allow [Plaintiff] to return to work proximately caused damage to [Plaintiff] in the form of unpaid wages, medical bills[,] and unnecessary professional fees.

[117-2] at 2. Defendant seeks to preclude Lalk from testifying as to all three opinions, arguing that (1) he is not qualified to opine on Plaintiff's fitness to return to work at any point; (2) his opinions are not based on a reliable principles, scientific method, or reliable data; and (3) his testimony will not assist the jury. See [113].

## II.  Legal Standard

Federal Rule of Evidence ("Rule") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. See *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). Rule 702 permits the admission of expert opinion

---

[3] Lalk's expert disclosure does not indicate whether these documents were produced in litigation or whether they contain Bates numbering. See [117-2] at 5.

[4] Lalk indicated in his deposition that he may have reviewed Lynch's deposition, but he could not recall if that was before or after he drafted his expert report. In addition, at times, Lalk testified that he was aware of or had read certain unspecified articles, studies, or other literature. But Lalk failed to name any such sources as materials upon which he relied in drafting his report or to identify them by name or title at any point, and the parties have not provided any indication that Lalk revised his expert report to name or reference any additional materials following his deposition.

4

testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. (quoting Fed. R. Evid. 702). Trial courts are obligated to act as a "gatekeeper" to ensure that the expert testimony is both reliable and relevant. See *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Daubert*, 509 U.S. at 589. The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine whether it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtek, Inc*., 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152).

To determine reliability, the proponent must show that the expert's testimony is based on "sufficient facts or data" and that it is "the product of reliable principles and methods." Fed. R. Evid. 702. The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 147-49. Expert testimony may not be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; see also *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). District courts have "great latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Pansier*, 576 F.3d at 737. And "any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 745 (3d Cir. 1994).

To determine relevance, the proponent must show that the expert's "reasoning or methodology properly can be applied to the facts in issue" and "the testimony will assist the trier of fact with its analysis of any of the issues involved in the case." *Daubert*, 509 U.S. at 592-93; *Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000); Fed. R. Evid. 702.

Thus, in evaluating a motion to exclude expert testimony under Rule 702 and *Daubert*, the Court considers whether the proffered expert (1) is qualified, (2) has employed a reliable methodology, (3) offers opinions that follow rationally from the application of the expert's methodology and qualifications, and (4) presents testimony on a matter that is relevant to the case at hand. See *Kumho Tire*, 526 U.S. at 151-53; *Gen. Elec. Co.*, 522 U.S. at 146; *Daubert*, 509 U.S. at 589-93; *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (explaining that ultimately, the expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Still, the Court is mindful that question of whether the expert is credible or whether his theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based. *Smith*, 215 F.3d at 719.

**III. Analysis**

    **A. Lalk's Qualifications**

The first issue the Court must address is whether Lalk possesses the necessary qualifications to offer an expert opinion in this case. Rule 702 permits a witness to testify in the form of an opinion or otherwise if qualified as an expert by knowledge skill, experience, training or education. An expert is not entitled to offer opinions outside of his or her realm of expertise. See *United States v. Pree*, 408 F.3d 855, 871 (7th Cir. 2005) (citing *United States v. Benson*, 941 F.2d 598, 605 (7th Cir. 1991)).

Defendant argues that Lalk's opinions in this case are outside the scope of his expertise. In particular, Defendant asserts that Lalk cannot opine on when Plaintiff was able to return to work because (1) he is not a doctor; (2) he does not diagnose or treat alcoholism, drug abuse, or other conditions; (3) he has never conducted a return-to-work or fitness-for-duty examination; and (4) he has "zero relevant experience with locomotive engineers." See [113] at 8. In short, Lalk lacks direct experience with the narrow vocational issues involved in this case. [118] at 2-3. Plaintiff responds by generically emphasizing Lalk's long career as a vocational rehabilitation counselor and his "extensive experience" in evaluating whether a person is capable of performing a particular job or task or returning to work, and by arguing that Lalk is being offered to provide a vocational opinion, not a medical diagnosis. See [117] at 2-4.

A review of Lalk's resume and deposition testimony demonstrates that he is qualified to render an opinion as a vocational expert in this matter. Lalk is a licensed and certified counselor with approximately 38 years of experience as a vocational counselor or specialist, and he has offered vocational opinions in more than 140 matters in the last five years. He testified that he has significant experience with return-to-work and other employment considerations by way of his work on workers' compensation cases. See [117-1] at 19. Accordingly, Lalk's opinions on Plaintiff's ability to return to work are within the realm of his experience in evaluating the vocational capabilities. *Pree*, 408 F.3d at 871. Defendant's argument that Lalk should be disqualified from testifying in this particular case because he is not a doctor with expertise in substance abuse is inconsistent with the liberal approach to expert witness qualification taken by Rule 702. See *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 801 (N.D. Ill. 2005). Further, Plaintiff has confirmed that Lalk is not being offered to diagnose Plaintiff's substance abuse, but instead to opine on Plaintiff's ability to return to work. See [117] at 3.

"While making objective medical findings and diagnoses may be medical issues, once an individual's capabilities are defined, matching those abilities to a particular profession is not a medical matter or opinion." *Brewer v. Cuyahoga Valley Railway Co.*, 2004 WL 5508630, at *1 (N.D. Ohio Oct. 14, 2004) (finding vocational expert qualified to testify about a plaintiff's capabilities to return to work as a locomotive engineer). The same can be said about Defendant's overly restrictive argument that Lalk should be disqualified because he has not previously worked with locomotive engineers. See *id.* (finding the suggested requirement that vocational expert have previous experience with locomotive engineers too restrictive); see also *Smith*, 215 F.3d at 720 (district court erred in concluding that experts were not qualified in a relevant field solely because their expertise related to an area other than the one concerning the ultimate issue to be decided by the trier of fact).

Although Defendant rightly points out that Lalk lacks experience in performing specific return-to-work evaluations and that his experience with chemical dependency issues is thin and arguably out-of-date, the Court believes that disqualifying Lalk on these bases would amount to too narrow of a reading of Rule 702. As the Court finds that Lalk has the requisite foundation to offer opinions on Plaintiff's vocational abilities, Lalk's lack of specialization goes to the weight of his testimony, but does not disqualify him.

      **B.    Lalk's Opinions**

Finding that Lalk is qualified to offer vocational opinions in this case, the Court next analyzes whether the opinions offered by Lalk are sufficiently reliable and relevant to be presented to a jury. The reliability analysis focuses on the methodology of the expert. See *Clark v. Takata Corp.*, 192 F.3d 750, 756-57 (7th Cir. 1999). The relevance inquiry focuses on the

application of the methodology and whether the expert testimony will assist the trier of fact with its analysis of any of the issues involved in the case. *Id*. at 757; *Smith*, 215 F.3d at 718.

### 1. Opinion that Plaintiff Was Fit to Return to Work in May 2006

The parties do not dispute that Plaintiff completed Rush's intensive outpatient treatment program in May 2006. In his first opinion, Lalk uses this fact to draw the conclusion that, at the time of completion, Plaintiff was "fit to return to work." See, *e.g*., [117-2] at 3 ("The discharge report from Rush Behavioral establishes that [Plaintiff] was fit to return to work."). Defendant argues that Lalk's opinion both is not based on a reliable method and is irrelevant. The Court agrees.

Turning first to Lalk's methodology, an expert must substantiate his opinion, and not simply provide the ultimate conclusion without analysis. *Clark*, 192 F.3d at 757 (citation omitted). The entirety of Lalk's "analysis" of whether Plaintiff was "fit to return to work" following his completion of the Rush outpatient treatment program hinges on Lalk's discussion of "two central criteria looked at when determining whether an individual is fit to return to work after treatment for substance abuse." [117-2] at 2. Lalk's report does little more than reference these general "criteria" and then conclusively set forth Lalk's subjective belief that their application proves that Plaintiff was fit to return to work in May 2006.

Specifically, the report states that these criteria are: (1) "whether the individual's job will invoke stress that would cause or trigger [him] to abuse drugs or alcohol," and (2) "whether that person will put others in danger if he is returned to work." *Id*. Through his report and deposition, Lalk fails to elaborate on these criteria, stating amorphously that they are drawn from "primarily overall training review of various pieces of literature on the subject and basically [Lalk's] own experience working with individuals with alcohol and drug dependencies" from 1979 to 1990. See [117-1] at 72-74. Lalk does not explain how to apply, analyze, or interpret

the criteria. It appears from Lalk's report that the simple answers (1) "it will not" and (2) "he will not" could equal fitness to return to work, but this is not clearly set forth by Lalk in either his report or testimony.

In applying the first criterion, Lalk states that Plaintiff's "return to work in May of 2006 would not have put in him a position of stress so much as it would have resulted in him falling into substance abuse." [117-2] at 2-3. Lalk concedes that this conclusion is based on the absence of what he might consider relevant information in the records he reviewed. See [117-1] at 75 ("[T]here never seemed to be any issue in any of the records that I reviewed of [Plaintiff] ever abusing alcohol or drugs related to his job."); see also [117-2] at 3 ("there was no record of [Plaintiff] ever abusing alcohol or drugs while working for the Defendant[]"). In addition, Lalk explains that his conclusion regarding Plaintiff's stress levels rested on his unspecified "experience" "that a person that is working is usually under less stress than a person that's unemployed," not on any information specific to Plaintiff. See [117-1] at 75; see also *id.* at 76 ("there was never any indication" of Plaintiff's tolerance for stress in his work environment), 77-78 (explaining that some individuals derive stress from a fast-paced work environment and others thrive in that environment; "I don't know which – which type [Plaintiff] is."). For the second criterion, Lalk again relies on the lack of "evidence that [Plaintiff] would be a danger to himself or others or that he could not perform his job duties" in the documents he reviewed in this case. *Id.* at 3; see also [117-1] at 85 ("There was nothing in the record that suggested to me that his abuse of alcohol or drugs was in any way connected directly with performance at work.").

Defendant argues that the two criteria discussed by Lalk are not adequately established and were not reliably applied. [113] at 9-10. The Court agrees on both counts. First, Lalk has

not provided any industry support as to how the criteria have been established—or any citation to where these criteria can be found—nor does he describe whether these criteria have been tested or subjected to peer review. In his deposition, Lalk again failed to explain where these criteria are found or how they are utilized by vocational counselors. See *Elcock v. Kmart Corp.*, 233 F.3d 734, 749 (3d Cir. 2000) (finding methodology of vocational rehabilitationist unreliable where she failed to introduce any evidence that the method was used by other experts or even referenced in vocational literature). What is more, Lalk does not describe any standards controlling this methodology, and in applying the criteria himself, Lalk relied only on speculation drawn from: (1) the absence of explicit statements in the limited records he reviewed and (2) his subjective and uninvestigated beliefs regarding Plaintiff's stress levels and tolerance. With these flaws, Lalk's "analysis" of Plaintiff's fitness to return to work in May 2006 is unreliable. See *Myers v. Ill. Central Railroad Co.*, 629 F.3d 639, 645 (7th Cir. 2010) (expert opinions that were based on a "hunch or an informed guess" were properly excluded); see also *Brown v. Burlington N. Santa Fe Railway Co.*, 765 F.3d 765, 773 (7th Cir. 2014) (affirming the exclusion of expert testimony that was premised on faulty methods and lack of investigation).

*Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809 (7th Cir. 2004), cited by Defendant, [113] at 15, supports this result. There, the Seventh Circuit affirmed the exclusion of expert testimony from a vocational rehabilitation counselor that the district court found to be speculative. Specifically, the proffered expert opined that plaintiff was capable of performing his job duties while acknowledging that she could offer no opinion on whether the plaintiff could perform specific job-related tasks. *Ammons*, 368 F.3d at 816. Similarly, in formulating his first opinion, Lalk states that Plaintiff was fit to return to work in May 2006 because a return would

11

not have caused him stress, all the while acknowledging that he could not testify as to Plaintiff's work-related stress or tolerance thereof.[5]

In response, Plaintiff, who bears the burden of establishing that Lalk's testimony satisfies the *Daubert* standard, argues that Lalk's extensive expertise is the basis of his methodology and that courts have found the simple application of expertise to case documents to be an acceptable methodology.[6] See [117] at 5. The Court acknowledges that an expert's reliance on experience alone does not render his opinion unreliable, see 2000 Advisory Committee Notes to Rule 702, but both Plaintiff and Lalk fail to sufficiently explain how he has applied his extensive expertise to the facts of this case. His report only offers factual recitations and conclusions without any tangible substantiation. *Clark*, 192 F.3d at 757. The Seventh Circuit is clear: "[t]alking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (citation omitted); see also *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) ("'expert intuition[]' is neither

---

[5] Given that Lalk's report states that the Rush discharge report itself "establishes that [Plaintiff] was fit to return to work," it is unclear whether Lalk's "analysis" of the two above-described criteria played any real role in his conclusions. See [117-1] at 91 ("If [Lynch is] indicating that [Plaintiff] could return to work at full responsibilities without restriction, then I'm not sure what else the EAP was looking for. He had met the requirements of the treatment program, so I would certainly accept the opinion of the discharge summary."). Giving Plaintiff the benefit of the doubt, the Court has analyzed Lalk's "application" of the criteria as his methodology, but the Court notes that Lalk's testimony obscures whether he even relied on his own criteria in rendering his opinion or whether he simply came to the conclusion on the face of the Rush discharge report alone. Either way, the only thing connecting the data and Lalk's opinion is his own say-so, which is unacceptable. See *Gen. Elec. Co.*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

[6] Plaintiff cites *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866 (S.D. Ind. 2014) in support, but the Court finds the expert analysis in that case distinguishable. That expert (who was designated to provide testimony on the protectability of a trade dress) derived his opinion from his expertise, the facts of the case, and his "extensive review of the MP5 in comparison to other guns of similar type available in the market." *Id*. at 907-08. And in presenting his opinion, he provided sufficient factual discussion and analysis to enable the fact finder to infer that the MP5 at issue in the litigation had acquired a secondary meaning, rather than merely presenting the conclusion that it had acquired a secondary meaning.

normal among social scientists nor testable—and conclusions that are not falsifiable aren't worth much to either science or the judiciary").

The Court further disagrees with Plaintiff's suggestion that vocational experts are not suited to the use of scientifically reliable methods in generating their opinions. To this point, other courts have found the well supported opinions of vocational experts to be reliable and scientifically sound, unlike the speculative and conclusory opinion Lalk offers here. See, *e.g.*, *Hale v. Gannon*, 2012 WL 3866864, at \*4-\*5 (S.D. Ind. Sept. 5, 2012) (finding vocational expert's methodology to be scientifically reliable where expert derived plaintiff's functional limitations from medical records; applied light work limitations from the Dictionary of Occupational Titles; used the Bureau of Labor Statistics to determine wages; utilized a scientific report regarding work-life expectancy; and cited all of these sources in her report); *Orner v. Nat'l Beef Packaging Co., LLC*, 2015 WL 8334544, at \*9-\*10 (M.D. Pa. Dec. 9, 2015) (vocational rehabilitation expert's methodology was reliable where he reviewed ADA treatises, met with and evaluated the plaintiff, inspected the plaintiff's work area, observed the plaintiff's work environment, and researched potential tools to assist the plaintiff at work; "importantly, [this methodology] can be replicated, tested, verified, or debunked"); *Brewer*, 2004 WL 5508630, at \*2 (regarding the reliability of a locomotive-engineer return-to-work opinion offered by a vocational expert, noting, without deciding, that the expert relied on a treatise, plaintiff's medical records, job descriptions in the Dictionary of Occupational Titles, an interview regarding the plaintiff's job responsibilities, and other things); see also *Elcock*, 233 F.3d at 747 (a vocational rehabilitationist assessing an expert's determinations would want to be able to test the underlying hypotheses and review the standards controlling the operation of the techniques applied in an attempt to reproduce the results).

The Court simply cannot discern the requisite link between the records on which Lalk relied and his conclusion that Plaintiff was fit to return to work upon his completion of the Rush outpatient treatment program in 2006. *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support."); *Gen. Elec. Co.*, 522 U.S. at 146. In formulating his opinion, Lalk does little more than review Plaintiff's discharge statement from Rush, note the absence of certain information in the documents reviewed, impute unsupported generalities to Plaintiff, and reach a bottom line conclusion. In so doing, Lalk provides nothing more than subjective assertions that are impermeable to challenge and incapable of repetition by anyone other than himself. In short, Lalk's opinion that Plaintiff was fit to return to work in May 2006 amounts to the kind of *ipse dixit* that the Supreme Court has prohibited (see *Gen. Elec. Co.*, 522 U.S. at 146) and is therefore inadmissible.[7]

As an additional point, Lalk's opinion that Plaintiff was fit to return to work in May 2006 is also irrelevant. The relevance inquiry focuses on the application of an expert's methodology to the facts of the case and the overall helpfulness to the jury. *Daubert*, 509 U.S. at 593; *Smith*, 215 F.3d at 718. First, as already discussed, Lalk "methodology" is all but non-existent. Second, to the extent that Lalk's opinion merely notes that Defendant did not accept the discharge report at face value, this is readily apparent from the face of the documents in this case

---

[7] Plaintiff argues that the medical records Lalk reviewed in forming his opinions are reliable, and he cites *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000), for the proposition that "[m]edical professionals reasonably may be expected to rely on self-reported patient histories." (Citation omitted). This argument misses the point. Not only is Lalk, by Plaintiff's own admission, not a medical professional so as to be covered by this proposition, but Defendant has not argued at any point to date that Lalk's review and reliance on Plaintiff's medical records renders his opinions unreliable. True, Defendant argues that Lalk did not rely on sufficient facts or data to support his opinions, but that is not the same. Further, the use of a permissible or reliable source cannot save Lalk's speculative and conclusory opinion here, which lacks the connective reasoning that ties those records—or any other supporting data—to the expert's ultimate opinions.

and Lalk does not offer any specialized knowledge in highlighting the dispute. See, *e.g.*, [117-1] at 70 ("I'm just pointing out that [Dr. Henry's] conclusions seemed to be different than the opinions of the treating personnel, the medical personnel at Rush."), 91 ("If [Lynch is] indicating that [Plaintiff] could return to work at full responsibilities without restriction, then I'm not sure what else the EAP was looking for."); see also *Benson*, 941 F.2d at 604 (it was an abuse of discretion to admit expert testimony that, in part, drew inferences the jury was qualified to draw). Third, "[a]n expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful." *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014); see also *Benson*, 941 F.2d at 604 ("[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury."). Lalk's opinion at times parrots the Rush discharge report completed by Lynch, while at the same time discrediting the conclusions reached by Dr. Henry. For example, Lalk's report states that Plaintiff denies making certain statements to Dr. Henry in 2006, and that it is Lalk's opinion that "[i]f the jury were to accept [Plaintiff's] testimony there is absolutely no basis for any further treatment." [117-2] at 3. Not only does this opinion border on an impermissible credibility determination, *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) ("[A]n expert cannot testify as to credibility issues."), in opining as to whether additional medical treatment was required, it also pushes Lalk's opinions beyond the bounds of his vocational expertise and purports to offer a medical opinion that he is not qualified to give. For all of these reasons, Lalk's opinion that Plaintiff was fit to return to work in May 2006 does not satisfy *Daubert*.

2. Opinion that Defendant Improperly Denied Plaintiff the Opportunity to Return to Work in 2008

The Court also finds Lalk's second opinion, that "Defendant[] again improperly denied [Plaintiff] the ability to return to work" at some indefinite point in 2008, unreliable. Lalk's report indicates that this opinion is supported by (1) Plaintiff's completion of additional treatment and (2) Defendant's improper "stalling" or "unnecessary delay." [117-2] at 3. To the extent that Lalk opines that Plaintiff was able to return to work in 2008, this opinion is *ipse dixit* like his first opinion. To the extent that Lalk offers an opinion on Defendant's motives and rationale, this opinion is again speculative and it also improperly opines on matters outside of Lalk's expertise.

First, in discussing Plaintiff's abilities, Lalk jumps from facts to conclusions with even less "analysis" than his first opinion. Lalk's report states that Plaintiff had completed "nearly two (2) years of additional treatment," he had "a period of sobriety since 2006," and at one point, he "successfully completed" certain requirements set forth by Dr. Henry. See *id.* Despite listing these factors, Lalk does not explain what about the additional treatment, period of sobriety, or completion of Dr. Henry's requirements qualified Plaintiff to return to work. In fact, he does not even attempt to (1) apply the two aforementioned "criteria" Plaintiff's situation in 2008, (2) analyze Plaintiff's fitness or abilities by any other method or rubric, or (3) discuss Plaintiff's job requirements or work environment. Again, *Daubert* requires that an expert's opinion must be grounded in "methods and procedures," and must consist of more than simply "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589. It may well be that this opinion lacks analysis because it is inherently reliant on Lalk's first opinion that Plaintiff was fit to return to work as of May 2006. As the Court already explained, that opinion is unreliable, and as such,

any subsequent opinion predicated on that opinion, without any independent methodology or analysis, is also unreliable. See *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745.

Second, to the extent that this opinion discusses Defendant's "improper denial" instead of Plaintiff's vocational fitness, Lalk concedes that it is based entirely on speculation. See *Ammons*, 368 F.3d at 815 (affirming the exclusion of expert testimony that was not based on any specific methodology applied to the facts but was only unsupported speculation). Specifically, at his deposition, Lalk conceded that he did not know why Defendant "stalled" Plaintiff's return to work: "I don't know if [Defendant was] doing that because [it was] following the advice of Dr. Henry, somebody misfiled paperwork, somebody had a grudge against [Plaintiff]. I can figure out all sorts of things that might be happening but I don't have the records of the decision makers at that time or what exactly was going on. So I'm just concluding that this may have been the reason why he was not reinstated in 2008." See [117-1] at 107. Moreover, in this opinion, Lalk again steps beyond the realm of his expertise in vocational matters to opine on the propriety of Defendant's actions. See, *e.g.*, [117-2] at 3 (discussing the sleep study and C-Pap machine issues, and opining that Defendant should have "addressed this issue in 2006, while [Plaintiff] still had insurance."). These are not opinions that Lalk is qualified to provide, as they have nothing whatsoever to do with Plaintiff's vocational rehabilitation or abilities. See [117] at 3. Accordingly, the Court finds that Lalk's second opinion is unreliable and inadmissible.

### 3. Opinion on Damages

In his third opinion, Lalk concludes that "Defendant's failure to allow [Plaintiff] to return to work proximately caused damage to [Plaintiff] in the form of unpaid wages, medical bills and unnecessary professional fees." [117-2] at 2. Specifically, Lalk notes that Plaintiff made $72,000 as an engineer in 2005, and he therefore opines that Defendant's failure to return Plaintiff to work "resulted in an approximately $360,000.00 loss in wages and earnings." *Id.* at

3-4. Lalk's report does not specify the amount of medical and professional fees that Plaintiff "had to pay," although it notes that Defendant "cover[ed] the costs of treatment by way of Plaintiff's insurance." *Id*. at 2, 4. At his deposition, Lalk testified that the basis for his opinion on Plaintiff's damages was "a gross estimate of what [he] was told [Plaintiff's] wages were and the amount of time that he was not working"; Lalk testified that he procured this information from Plaintiff's deposition. [117-1] at 119. Lalk confirmed that in coming up with his damages amount, he performed a "straight back pay calculation," simply multiplying Plaintiff's yearly wages ($72,000) by the amount of time he was out of work (four years). *Id*. at 119-20. Defense counsel pointed out that $72,000 multiplied by four equals $288,000, not $360,000. Lalk agreed that he had miscalculated Plaintiff's back pay. *Id*. In addition, Lalk testified that he did not consider benefits in his calculation, and he confirmed that he did not consider mitigation, even though he agreed that any back pay wages should be reduced by the amount of mitigation. *Id*. at 120-22. Finally, as to the medical and professional fees Lalk mentioned in his damages opinion, Lalk conceded that he did not have dollar amounts for either, and he confirmed that the "professional fees" referenced are attorneys' fees. *Id*. at 122-23.

Defendant argues that Lalk's damages opinion is not reliable or relevant. See [113] at 11-12, 14. Plaintiff does not offer a specific response to Defendant's arguments on Lalk's opinion on damages. The Court again agrees with Defendant.[8] As to Lalk's opinion on Plaintiff's back-pay damages, his "gross estimate" is speculative and does not demonstrate the level of "intellectual rigor" envisioned by *Daubert*. In addition, his report contains a mathematical error in the straightforward back pay calculation, and Lalk admittedly did not

---

[8] Lalk's opinion on damages is also impermissible to the extent that it states a legal conclusion, *i.e.*, that Defendant "proximately caused" Plaintiff's damages. See *Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (excluding expert testimony that consisted of legal conclusions).

consider any other information or items other than Plaintiff's annual wages in forming this opinion. He does nothing to analyze or include mitigating factors or benefits paid by Defendant. Perhaps even more strikingly, Lalk does nothing to analyze or even attempt to estimate the non-back pay damages on which he purports to opine. As such, Lalk's damages opinion is not based on "sufficient facts or data" as required by Rule 702, and it is not reliable.[9]

Further, Lalk's simple back pay calculation based on figures supported only by testimony elicited in Plaintiff's deposition does not involve the application of specialized knowledge to the facts of the case. Because any layperson can grasp the simple concept and conduct the same analysis employed by Lalk here, his opinion on Plaintiff's damages in this case also is inadmissible because it is not relevant. See *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) ("[N]o expert testimony is needed when the subject matter of the testimony is clearly within the average person's grasp."). Not only that, Lalk's statement that Plaintiff has some unspecified amount of non-back pay damages provides nothing of use to the jury.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to exclude Lalk's testimony in this case [112] is granted. This case is set for status hearing on July 12, 2017 at 9:30 a.m.

Dated: June 20, 2017

Robert M. Dow, Jr.
United States District Judge

---

[9] Lalk's opinion that Plaintiff's damages include his attorneys' fees also is impermissible. Although the ADA permits an award of "reasonable attorney's fees" to the prevailing party, 42 U.S.C. § 12205, Lalk is neither qualified to opine on this topic in general nor does he have any personal knowledge of the actual fees or work involved. This is apparent through the absence of any attempt in his report to quantify the total amount of attorneys' fees, let alone "reasonable" attorneys' fees.

19